```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 01/17/2017
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                                        :
SYLVIA ITZHAKI,                                                         :
                                                                        :
                                            Plaintiff,                  :      15-CV-7093 (JMF)
                                                                        :
                    -v-                                                 :      OPINION AND ORDER
                                                                        :
PORT AUTHORITY OF NEW YORK AND NEW                                      :
JERSEY,                                                                 :
                                                                        :
                                            Defendant.                  :
                                                                        :
------------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

      Plaintiff Sylvia Itzhaki sues her employer, the Port Authority of New York and New Jersey (the "Port Authority"), alleging a violation of the Rehabilitation Act of 1973, 29 U.S.C.A. § 701 *et seq*.  Specifically, Itzhaki alleges that the Port Authority, the recipient of federal funds, delayed promoting her to the rank of Sergeant in the Port Authority Public Safety Department because of a disability — namely, an injury she sustained on the job.  The Port Authority now moves, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for summary judgment.  For the reasons discussed below, the motion for summary judgment is granted.

## BACKGROUND

      The relevant facts, taken from the Amended Complaint and materials submitted in connection with the pending motions, are either undisputed or described in the light most favorable to Itzhaki.  *See, e.g.*, *Costello v. City of Burlington*, 632 F.3d 41, 45 (2d Cir. 2011).

      Itzhaki joined the Port Authority's Public Safety Department in July 2002.  (Docket No. 29 ("Def.'s SOF") ¶ 4).  In January 2003, she was reassigned to the Central Police Pool, and on March 28, 2004, she was reassigned once again to the Police Academy, where she remained until

April 2014. (*Id.* ¶¶ 5-6). On October 9, 2012, Itzhaki injured her knee during a training exercise at the Police Academy. (*Id.* ¶ 40). As a result of the injury, she remained out of work until January 2014, when she returned to limited duty; she returned to full duty on February 28, 2014. (*Id.* ¶ 42). During her extended absence, Itzhaki's doctor, Dr. Frank A. Cordasco, performed two surgeries on her knee. (*Id.* ¶ 43). For the duration of her absence, neither Dr. Cordasco nor the Port Authority cleared her to return to work. (*See* Docket No. 30 ("Lee Decl."), Ex. J ("Dr. Cordasco's Notes"); Docket No. 36 ("Soto Decl."), Ex. H ("Port Authority Notes") 39).

On March 3, 2010, the Port Authority issued a Promotional Evaluation Announcement, which included a job description for the position of Sergeant. (Def.'s SOF ¶¶ 9-10; Lee Decl., Ex. C ("PEA")). The job description stated that the duties and responsibilities of Sergeant included supervising, reviewing, and instructing police officers; responding to potentially hazardous situations that might arise, including traffic conditions, emergencies, firefighting, and rescue work; and the protection of life and property. (Def.'s SOF ¶ 11; PEA 6). The Port Authority's process for evaluating applicants included both a written examination, conducted in April 2010, and an initial screening of candidates' attendance, discipline, and history of civilian complaints and internal affairs investigations. (Def.'s SOF ¶¶ 9, 14). Those who passed the initial screening then participated in a "qualifications review" meeting, after which they were rated by a Promotion Review Board in seven different categories. (*Id.* ¶¶ 15, 17-18). For each category, candidates were rated either "Outstanding," "Acceptable," or "Unacceptable." (*See* Lee Decl., Ex. E ("Screening Standards")).[1] Based on those ratings, the candidates were then

---

[1] The Port Authority filed Exhibit E to the Declaration of Megan Lee "under seal pursuant to the Consent Discovery Confidentiality Order and L. Civ. R. 5.3." A party, however, may not file anything under seal without Court approval, and the Port Authority did not seek (let alone obtain) Court approval here. (On top of that, Local Civil Rule 5.3 pertains to service by overnight delivery and has nothing to do with filing under seal.) If the Port Authority wants

placed into one of three groups: "Highly Recommended," "Recommended," or "Not Recommended." (Def.'s SOF ¶ 20; Screening Standards). Any candidate who received no more than one Acceptable rating and Outstanding ratings in all other categories was placed in the Highly Recommended group; any candidate who received two or more ratings of Acceptable and no ratings of Unacceptable was placed in the Recommended group. (*Id.*).

Itzhaki took and passed the written examination in April 2010 and was considered for promotion to Sergeant in November 2012. (Def.'s SOF ¶¶ 29-30). At that time, to receive an Outstanding rating in the "Breadth of Experience/Exposure" category, a candidate had to have at least one year of experience at two or more commands and more than two years of experience in certain special commands, including the Central Police Pool. (*Id.* ¶ 21; Docket No. 31 ("Ford Aff.") ¶ 25; Screening Standards). To receive an Outstanding rating in the "Attendance" category, a candidate had to have had zero to three absence occasions since January 1, 2007. (Def.'s SOF ¶ 22; Screening Standards). Itzhaki was rated Acceptable in both categories because she had been assigned to the Central Police Pool for less than two years and because (not counting her absence for the injury she sustained on duty, which was exempt) she had been absent on four occasions between 2007 and 2012. (Ford Affidavit ¶¶ 26, 28). Accordingly, she was placed in the Recommended group rather than the Highly Recommended group. (*Id.* ¶ 29). In August 2013, the Port Authority promoted to Sergeant twenty-five officers who had qualified for the Highly Recommended group. (*Id.* ¶ 21). Itzhaki was not among them as she was only in

---

Exhibit E (or any other document) to remain under seal, it shall file a letter brief to that effect within one week of this Opinion and Order, explaining why keeping it (or them) under seal is consistent with the presumption in favor of public access to judicial documents. *See generally Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119-20 (2d Cir. 2006). If the Port Authority does not file such a letter brief, it shall promptly file Exhibit E (and any other document heretofore sealed) on ECF.

3

the Recommended group.  Itzhaki was ultimately promoted to Sergeant, however, in April 2014.  (*Id.* ¶ 31).

## LEGAL STANDARDS

Summary judgment is appropriate where the admissible evidence and the pleadings demonstrate "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (per curiam).  A dispute over an issue of material fact qualifies as genuine "if the evidence is such that a reasonable jury could return a judgment for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *accord Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008).  The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim."  *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (citing *Celotex*, 477 U.S. at 322-23); *accord PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam).  In ruling on a motion for summary judgment, all evidence must be viewed "in the light most favorable to the non-moving party," *Overton v. N.Y. State Div. of Military & Naval Affairs*, 373 F.3d 83, 89 (2d Cir. 2004), and the court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought," *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 83 (2d Cir. 2004).

Claims under the Rehabilitation Act are analyzed under the familiar three-step burden-shifting scheme established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See,*

*e.g.*, *Yetman v. Capital Dist. Transp. Auth.*, No. 15-2683, 2016 WL 6242924, at *2 (2d Cir. Oct. 25, 2016). Under that scheme, the plaintiff bears the initial burden of establishing a *prima facie* case of discrimination. *See* 411 U.S. at 802. "If the plaintiff does so, the burden shifts to the defendant to articulate some legitimate, non-discriminatory reason for its action." *Holcomb v. Iona Coll.*, 521 F.3d 130, 138 (2d Cir. 2008) (internal quotation marks omitted). Once the defendant puts forward such a "legitimate, non-discriminatory reason," the plaintiff "may no longer rely on the presumption raised by the *prima facie* case," but rather must put forward evidence that would allow a reasonable jury to conclude that "the employer's determination was in fact the result of [unlawful] discrimination." *Id.*

Notably, the Second Circuit has cautioned that courts should be "especially chary in handing out summary judgment in discrimination cases," as the intent of the employer is often a central factual issue. *Jamilik v. Yale Univ.*, 362 F. App'x 148, 149 (2d Cir. 2009) (internal quotation marks omitted). Nevertheless, it is "beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases." *Abdu-Brisson v. Delta Air Lines. Inc.*, 239 F.3d 456, 466 (2d Cir. 2001). Indeed, just as in the non-discrimination context, "an employment discrimination plaintiff faced with a properly supported summary judgment motion must do more than simply show that there is some metaphysical doubt as to the material facts. She must come forth with evidence sufficient to allow a reasonable jury to find in her favor." *Brown v. Henderson*, 257 F.3d 246, 251 (2d Cir. 2001) (citation and internal quotation marks omitted). That is, "[a] plaintiff must produce not simply some evidence, but sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by the [defendant] were false, and that more likely than not [discrimination] was the real reason for the [employment action]." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir.

5

2000) (alterations in original) (internal quotation marks omitted).  For their part, courts evaluating the sufficiency of evidence on a motion for summary judgment must "carefully distinguish between evidence that allows for a reasonable inference of discrimination and evidence that gives rise to mere speculation and conjecture."  *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 448 (2d Cir. 1999).

## DISCUSSION

The Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  29 U.S.C. § 794(a).  The Act incorporates the standards of the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12111 *et seq.*, *see id.* § 794(d), with one significant distinction: Unlike the ADA, the Rehabilitation Act requires proof that discrimination was "*solely* due to an individual's disability," *Cheung v. Donahoe*, No. 11-cv-0122 (ENV) (RLM), 2016 WL 3640683, at *5 (E.D.N.Y. June 29, 2016); *see* 29 U.S.C. § 794(d); *see also Rodriguez v. City of New York*, 197 F.3d 611, 618 (2d Cir. 1999).  A plaintiff can base a Rehabilitation Act claim on one or more of "three available theories: (1) intentional discrimination (disparate treatment); (2) disparate impact; and (3) failure to make a reasonable accommodation."  *Tsombanidis v. West Haven Fire Dep't,* 352 F.3d 565, 573 (2d Cir. 2003).

Itzhaki claims that the Port Authority violated the Rehabilitation Act by denying her a promotion to Sergeant in August 2013.  (Docket No. 34 ("Pl.'s Opp'n") 1).  More specifically, she brings claims based upon two theories: failure to make a reasonable accommodation and intentional discrimination.  (Docket No. 18 ("Am. Compl.") ¶ 23).  The Port Authority argues that Itzhaki's claims fail because she was not disabled within the meaning of the Rehabilitation

Act (Docket No. 32 ("Def.'s Mem.")  8), but the Court need not address that argument as her claims fail for other reasons.

**A.  The Intentional Discrimination Claim**

The Court begins with Itzhaki's intentional discrimination claim.  To establish a claim of intentional discrimination under the Rehabilitation Act, a plaintiff must show that: "(1) she is disabled within the meaning of the Act; (2) she was otherwise qualified to perform the essential functions of her job, with or without a reasonable accommodation; (3) she suffered an adverse employment action due *solely* to her disability; and (4) her employer receives federal financial assistance."  *Cheung*, 2016 WL 3640683 at *5.  A "qualified individual" is defined as "an individual who, with or without a reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  42 U.S.C. § 12111(8); *see also Simms v. City of N.Y.*, 160 F. Supp. 2d 398, 405 (E.D.N.Y. 2001) (applying that definition to a Rehabilitation Act claim).  In determining whether a plaintiff can perform the essential functions of her job, courts consider, among other things, "[w]ritten job descriptions" and "[t]he amount of time spent on the job performing the function."  29 C.F.R. § 1630.2(n)(3).  Notably, in conducting such an analysis, courts "must give considerable deference to an employer's judgment regarding what functions are essential for service in a particular position."  *D'Amico v. City of N.Y.*, 132 F.3d 145, 151 (2d Cir. 1998).

Itzhaki's claim fails because she cannot establish that she was "otherwise qualified to perform the essential functions" of the job of Sergeant in August 2013.  As set forth in the job description that was attached to the March 3, 2010 Promotional Evaluation Announcement (PEA 6), Sergeants were expected to supervise, review, and instruct police officers; respond to situations that might arise, including traffic conditions, emergencies, firefighting, and rescue

7

work; and protect life and property.  (*Id.*).  Those requirements, which must be given "considerable deference" by the Court, *D'Amico*, 132 F.3d at 151, plainly demanded a person's physical presence; after all, a person cannot meaningfully supervise officers or respond to situations remotely.  Itzhaki, however, was indisputably unable to attend work in August 2013, when she was passed over for promotion.  (*See* Dr. Cordasco's Notes (noting, in October 2013, that Itzhaki was still "clearly not ready to get back to full duty as a police officer given her limitations at this time"); Port Authority Notes 39 (noting, in August 2013, that Itzhaki was "not fit for work")).  Moreover, in her own deposition, Itzhaki admitted that she could not perform the basic functions of Sergeant during the relevant time period.  (Lee Decl., Ex. I ("Itzhaki Dep.") 140, 204, 210).  That admission, in itself, is fatal to Itzhaki's claim.  *See, e.g.*, *Serrano v. Shield Inst. of David, Inc.*, No. 94-cv-6745 (MBM), 1997 WL 167042, at *5 (S.D.N.Y. Apr. 9, 1997) (Mukasey, J.) (granting summary judgment to an employer where the "[p]laintiff admitted during his deposition that he was unable to perform the essential functions" of his job).

    Itzhaki contends that, by putting her in the Recommended group, the Port Authority implicitly conceded that she was fit to perform the "essential functions" of the Sergeant job.  (Pl.'s Opp'n 11).  In making that argument, however, Itzhaki ignores the fact that the initial evaluation process was merely an inquiry into whether the candidate met the necessary prerequisites for a promotion.  (*See* Def.'s SOF ¶ 18 (listing the categories that are taken into consideration in establishing a candidate's rating)).  In fact, any later job offer was conditional on the candidate passing a medical examination.  (Soto Decl., Ex. D, at 20-21).  Thus, contrary to Itzhaki's assertions, her Recommended rating had no bearing on whether she was physically able to perform the "essential functions" of the job in August 2013.  Itzhaki also points to her own testimony that she could "fulfill the duties of a Sergeant."  (Pl.'s Opp'n 12 (citing Itzhaki Dep.

206)).  But in referencing her own conclusory assertion, Itzhaki conveniently omits the next part of her testimony: ". . . [a]s long as the Port Authority accommodated me while I performed the duties."  (Itzhaki Dep. 206).  As detailed below, Itzhaki never asked for such an accommodation and fails to establish that such an accommodation would have permitted her to perform the essential functions of a Sergeant.  Accordingly, Itzhaki fails to make the requisite showing that she was "otherwise qualified" for a promotion to the rank of sergeant in August 2013.

In any event, even if Itzhaki could show that she was otherwise qualified for a Sergeant position, there is insufficient evidence to establish that she was passed over "due *solely* to her disability," as required to establish a *prima facie* claim of discrimination under the Rehabilitation Act.  *Kelly v. N.Y. State Office of Mental Health*, No. 13-cv-3383 (KAM) (SLT), 2016 WL 4203470, at *6 (E.D.N.Y. Aug. 9, 2016).  The only admissible evidence Itzhaki points to on that score is her testimony that, shortly after she returned to work, Chief Michael Brown told her "if you are wondering when you get promoted, it should be soon.  It would have happened sooner but you were out."  (Pl.'s Opp'n 17 (quoting Itzhaki Dep. 263-64)).  But even if Chief Brown did say that (a point he disputes (*see* Soto Decl., Ex. C, at 43)), and he was a decisionmaker with respect to the promotion (a point that is not clear), it does not show that the Port Authority denied Itzhaki the promotion due solely to her disability; after all, as discussed above, being present (that is, not being "out") was indeed necessary to fulfill the essential functions of the Sergeant job.  A single, relatively innocuous comment is, as a matter of law, insufficient to establish that Itzhaki was denied the job due solely to a disability.  *See, e.g.*, *Schreiber v. Worldco, LLC.,* No. 02-CV-4049 (DC), 2004 WL 1535562 (S.D.N.Y. July 9, 2004) ("Verbal comments constitute evidence of discriminatory motivation when a plaintiff demonstrates that a nexus exists between the allegedly discriminatory statements and a defendant's decision to

9

discharge the plaintiff."); *see also, e.g.*, *Danzer v. Norden Sys., Inc.,* 151 F.3d 50, 56 (2d Cir. 1998) (noting that a single stray remark by a decisionmaker, without more, cannot get a discrimination suit to a jury).[2]

Finally, even assuming *arguendo* that Itzhaki could make out a *prima facie* case of intentional discrimination, her claim would fail because the Port Authority has put forward a legitimate, non-discriminatory reason for her not getting the August 2013 promotion: namely, that she did not possess the requisite rating to be promoted. (Def.'s Mem. 12). Specifically, the Port Authority has established that the only officers promoted in August 2013 came from the Highly Recommended group and that Itzhaki was in the Recommended group. (Def.'s SOF ¶¶ 11, 37). Itzhaki tries to counter that explanation by asserting that her classification "as not 'Highly Recommended' was not carried out pursuant to non-discriminatory criteria," (Pl.'s Opp'n 18-20), but the evidence does not support that assertion. Put simply, beyond Itzhaki's own conclusory allegations, she provides no admissible evidence supporting her claim that the legitimate, non-discriminatory reason provided by the Port Authority was a pretext for discrimination. "Even in the discrimination context, however, a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment." *Holcomb*, 521 F.3d at 137. Because Itzhaki fails to do so, her intentional discrimination claim must be and is dismissed.

---

[2] Itzhaki also claims that she was "subjected to ribbing from her colleagues about 'faking' her injury." (Pl.'s Opp'n 18). But her testimony on that score is inadmissible hearsay, as she herself did not witness any such "ribbing." *See, e.g.*, *Connell v. Consol. Edison Co. of N.Y.*, 109 F. Supp. 2d 202, 208-09 (S.D.N.Y. 2000) (noting that inadmissible hearsay cannot form the basis of a discrimination claim, particularly when the plaintiff cannot identify either "the specific time . . . or place … [of the] alleged [discriminatory] remarks"). In any event, Itzhaki fails to establish that the unnamed "colleagues" at issue had anything to do with the decision not to promote her in August 2013. *See, e.g.*, *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 91 (2d Cir. 1996) ("The circumstances that give rise to an inference of discriminatory motive include actions or remarks *made by decisionmakers* that could be viewed as reflecting a discriminatory animus." (emphasis added)).

**B. The Failure-to-Accommodate Claim**

The Court turns, then, to Itzhaki's failure-to-accommodate claim. To establish a Rehabilitation Act claim based on an employer's failure to accommodate a disability, a plaintiff must show that: "(1) plaintiff is a person with a disability under the meaning of the [Rehabilitation Act]; (2) an employer covered by the statute had notice of [her] disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." *McBride v. BIC Consumer Products Mfg. Co.*, 583 F.3d 92, 97 (2d Cir. 2009) (alteration omitted); *see also, e.g.*, *Lyons v. Legal Aid Soc.*, 68 F.3d 1512, 1515 (2d Cir. 1995) (recognizing that the elements of a failure-to-accommodate discrimination claim under the ADA and Section 504 of the Rehabilitation Act are identical, except for Section 504's requirement that the employer receive federal funding).

Significantly, a "reasonable accommodation" is a modification "to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable[s] an individual with a disability who is qualified to perform the essential functions of that position." 29 C.F.R. § 1630.2(o)(1)(ii). A reasonable accommodation can be achieved in a variety of ways, *see* 29 C.F.R. § 1630.2(o)(2), and "employers are not required to provide a perfect accommodation or the very accommodation most strongly preferred by the employee," *Noll v. Int'l Bus. Mach. Corp.*, 787 F.3d 89, 95 (2d Cir. 2015). Additionally, a "reasonable accommodation can never involve the elimination of an essential function of a job," *Shannon v. N.Y. City Transit Auth.*, 332 F.3d 95, 100 (2d Cir. 2003), or result in promotion to a position for which the employee is unqualified, *see, e.g.*, *McBride*, 583 F.3d at 98; *see also* 29 C.F.R. § 1630.2(m); 29 C.F.R. pt. 1630, App. § 1630.2(o).

In general, it is the "responsibility of the individual with a disability to inform the employer that an accommodation is needed." *Graves v. Finch Pruyn & Co.,* 457 F.3d 181, 184 (2d Cir. 2006). That rule does not apply, however, where "the disability is obvious," such that "the employer knew or reasonably should have known that the employee was disabled." *Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127, 135 (2d Cir. 2008). In such instances, employers are expected to engage in "an interactive process [with their employees and in that way] work together to assess whether an employee's disability can be reasonably accommodated." *Id.* (alteration in original). Nonetheless, in establishing a *prima facie* case, a plaintiff "bears the burdens of both production and persuasion as to the existence of some accommodation that would allow [her] to meet the essential eligibility requirements of the service, program, or activity at issue." *McElwee v. County of Orange,* 700 F.3d 635, 642 (2d Cir. 2012).

Applying those standards here, Itzhaki's failure-to-accommodate claim plainly fails. For one thing, Itzhaki points to no evidence that she ever requested an accommodation. *See, e.g.*, *Taylor v. Harbour Pointe Homeowners Ass'n*, 690 F.3d 44, 49 (2d Cir. 2012) ("The defendants must have had an idea of what accommodation [the plaintiff] sought prior to their incurring liability for failing affirmatively to grant a reasonable accommodation."). In fact, in her own deposition, Itzhaki conceded that she *never* did so. (Itzhaki Dep. 207). Itzhaki tries to overcome the effects of that concession by asserting that the Port Authority "was on notice" of her disability. (Pl.'s Opp'n 14). But even if true, the Second Circuit has held that an employer's failure to engage in an interactive process, by itself, "does not allow a plaintiff to avoid summary judgment unless she also establishes that, at least with the aid of some identified accommodation, she was qualified for the position at issue." *McBride,* 583 F.3d at 101. Here, Itzhaki fails to identify any reasonable accommodation that would have allowed her to perform the essential

12

functions of the Sergeant position with her alleged disability.  Indeed, Itzhaki admits as much, noting that the only suitable accommodation would have been to allow her to "be a police sergeant working from home."  (Itzhaki Dep. 208).  But "[a] reasonable accommodation can never involve the elimination of an essential function of a job," *Shannon*, 332 F.3d at 100, or result in a promotion to a position for which the employee is unqualified, *McBride*, 583 F.3d at 98.  And, as discussed above, allowing Itzhaki to work as a Sergeant from home would have involved the elimination of an essential function of the job — namely, supervising, reviewing, and instructing police officers and responding to dangerous situations that might arise.  (PEA 6).

## CONCLUSION

For the reasons stated above, the Port Authority's motion for summary judgment is GRANTED, and Itzhaki's claims are dismissed.  The Clerk of Court is directed to terminate Docket No. 28 and to close this case.

SO ORDERED.

Date: January 17, 2017
      New York, New York

JESSE M. FURMAN
United States District Judge